## DECEMBER TERM, 1843.

### Redding B. Herring v. Anthony V. Winans, et al.

Courts of equity have power to grant new trials at law, where, from fraud of the one party, or unavoidable accident, or unforeseen necessity, the other party, without negligence on his part, has been unable to make out his case, on the first trial.

H., being an old and infirm man, unable to read, and being sued out of the county of his residence, sends to his lawyer, residing in the county where the suit is brought, the nature of his defence, and instructs him to defend the case ; the letter is lost in the transmission, and judgment is obtained against H. by default; *held,* upon the application of H. for a new trial in a court of equity, that his excuse for not making his defence at law was sufficient.

Where a note, made for discount at a bank, is made payable to the banking company, and is signed by G. as principal, and H. and others, as sureties, and the bank refuses to discount it, and the note is afterwards passed to W., in payment of the debt of some *third* person, neither principal nor surety to the note, and without their assent, W. having full knowledge of the object of the creation of the note ; *held,* that the note in the hands of W. was not obligatory upon the surety.

Where a note is payable to a banking company, and is taken by W., without indorsement from the payees, W. is affected by all the equities of the makers of the note.

Where a party designs to protect himself under the defence of being a *bona fide* purchaser, for a valuable consideration, without notice, it is a defence which he must set up himself ; and it is not necessary for the other party to charge him with notice.

The bill in this case states that the complainant, Redding B. Herring, made a note with the defendants, Thos. M. Green and Robert M'Kay, as sureties for one Henry Green, deceased, payable to the Mississippi Union Bank, for the purpose, and no other, of being discounted at that bank ; that it was not discounted, the bank refusing to do so ; that the defendant, Anthony V. Winans, obtained possession of the note, with full knowledge of the design of its execution and its failure, and charges on the 7th page of the bill, " that your orator is informed and believes, and so charges, that said A. V. Winans received said note in payment of a debt due to him from some persons other than the said Henry Green; that said bank has no interest in the suit," &c. The bill further states, that the complainant, knowing said note to be " *functus officio,*" had never heard of it, till he was sued upon it at law, in the name of the Mississippi Union Bank, use of A. V. Winans ; that on the 27th day of February, 1841, process in that suit was served upon

him ; that of this service he knew nothing ; his only knowledge of the suit was derived from a letter to him from Judge John J. Guion, his retained attorney to attend to his business, generally, informing him of the pendency of the suit, and asking him if he wished it defended, and if so, what was his defence ; that he is an old man, not able to read, and lives in Washington county, the suit being brought in Warren ; that he instructed his son to write to Judge Guion his defence, which his son did ; that the letter was sent in time to have reached its destination before Court, but it miscarried on the way, and judgment by default was obtained in May, 1841, against him ; that, under the imparlance law, supposing the case defended, he knew no trial could be had till fall ; that in the fall a dreadful epidemic prevented a Court, and that his first knowledge of the judgment being obtained against him was in February, 1842, when the execution was levied on his property ; that the judgment at law was taken without the production of the original note, which is outstanding somewhere, he does not know where, and he calls upon the defendant, Winans, to produce it. The bill also expressly charges, that the note was fraudulently obtained from the Union Bank, and, without the knowledge or ratification of complainant, transferred to defendant, Winans, in payment of the debt of some third person to said Winans, who well knew the note was void; the bill prays for a new trial at law, or a cancelment of the note and perpetual injunction. An amended bill, of a few lines, stating that an *alias* execution had been sent to Washington county, as well as the execution to Warren, was written on the original bill, after the first *fiat* had been granted, and before the original bill had been filed in the clerk's office ; the Circuit Judge also enjoined this execution to Washington by a separate *fiat.* This amended bill was not sworn to ; it contained no allegation except the fact of the issuance of the *alias* execution, and the prayer for its injunction.

To this bill and amendment there is a demurrer, for four grounds:

1. That a bill for a new trial at law does not lie in a court of equity.

2. That the excuse shown by the complainant, for not making his defence at law, is not sufficient to justify the interposition of the Chancellor.

3. That the bill does not disclose a defence that would, if made at law, have defeated the action on the note.

4. That the amended bill is not verified by oath.

*J. F. Foute,* for defendant, Winans.

The counsel for the defendant, Winans, believe that the causes of demurrer are sustained by the following cases and authorities, viz: — 1 John. Ch. Rep. 320, *Smith* v. *Mead & Lowry ;* ib. 465, *Baker* v. *Elking & Simpson ;* ib. 49, *Lansing* v. *J. & T. Eddy;* and the cases cited by the Chancellor : — 1 Schoales and Lefroy, 201, 7 Cranch, 332, *Bateman* v. *Wilcox,* and *Marine Ins. Co. of Alexandria* v. *Hodgson ;* 2 Story's Eq. 181, § 896, p. 183, § 897; 6 John. Ch. R. 90, ib. 479, *Foster* v. *Wood ;* 2 ib. 13, ib. 13, *Chisholm* and *Anthony, Adms. of James* v. *Reps. of Thomas ;* 2 Munford, 253, *Fenwick* v. *Murdo ;* 2 Bibb, 241, *Gales* v. *Shipp;* ib. 326, *Vetch* v. *Pennybacker ;* 3 ib. 486, *Lawless* v. *Reese ;* 4 ib. 349, *Band* v. *Belsh ;* 1 Littell, 140, *Harrison* v. *Harrison ;* 2 Wash. R. 255, *Pickett* v. *Morris ;* 1 Call, 224, *Manfier* v. *Whiting.*

If the defendants may be allowed to insist upon any matter, not specially assigned as cause of demurrer in this case, they call the attention of the Court to this fact, that the amended bill, filed, and upon which the injunction was ordered to be issued, was never sworn to by complainant, or any one else.

The original bill was sworn to, and *fiat* made thereon, on the 7th of March, 1842, for an injunction to the sheriff of Warren county; the amended bill, on which the injunction was ordered to the sheriff of Washington county, was filed without any leave obtained for that purpose, and *fiat* thereon granted on the 31st of March, 1842. This amendment, as the Court will see by inspection, is not verified, and was not sworn to, and the defendants insist, cannot, therefore, be sustained ; and this defect is fatal on demurrer. 1 Maddock's Ch. 127, 175.

*W. C. Smedes,* for complainant.

1. I will notice the objection, that a bill for a new trial at law does not lie in this Court, first, as it is the foundation of the others.

The objection would not have been made, had the objector given the subject any examination. The truth is, before the granting of new trials became the settled practice of the courts of law, equity had original and almost sole jurisdiction to direct such new trials, on account of fraud or surprise, under the penalties of perpetual injunction. 1 Burr, 390 ; *Floyd* v. *Jayne*, 6 John. Ch. R. 479.

And in modern days, since courts of law do, where the justice of the case requires it, and it is in their power to do so, grant new trials, courts of equity interfere for that purpose more rarely, and never where the motion could have been, or was made at law, and overruled. *Dodge* v. *Strong*, 2 John. Ch. R. 228 ; *Meredith* v. *Johns, et al.*, 1 Henning and Munford, 583.

Any fact, which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law, or of which he might have availed himself at law, but was prevented by fraud or accident, without any fault on his part, will justify application to a court of chancery. *Marine Insurance Company* v. *Hodgson*, 7 Cranch, 332 ; *Foster* v. *Wood*, 6 John. Ch. R. 87.

But if there was any doubt at all about the Chancellor's power to interfere and grant new trials, the Supreme Court of this State have settled that question beyond cavil. *Joslin* v. *Coffin*, 5 Howard, 539.

2. Does the bill disclose a good defence to the action at law, if it had been there made ?

I do not intend to assert, that a note signed by a principal and surety, to be discounted by one person for the benefit of the principal, and where that person refuses, afterwards discounted by any other, would be void. However, upon reason and principle, we might think the law should be, if the cases in 17 John. R. 126, 20 ib. 650, 15 ib. 205, 4 Cowen, 557, and 10 Wend. 314, did not settle it otherwise ; the case of *The Commercial Bank of Natchez use &c.* v. *Claiborne, et al.*, 5 How. 303, would be conclusive.

But the distinction in those cases and the one under consideration is palpable. Here, there is fraud ; there, there was none. There the note was discounted by the holder, in the regular course of business, fairly, for good and full consideration, received by the princi-

pal ; here, the holder receives it fraudulently, in the payment of the debt of some one, other than the principal or surety, and without the surety's knowledge. Here, the note is not produced, when the judgment is taken or since, but sedulously concealed ; there, the note was produced and proof made *aliundè*, that the holder acquired it honestly. There, the note accomplished the object of its execution ; here, it was used for a different purpose, as an instrument of fraud. The distinction between the two cases is obvious, and the complainant, if he could have established his defence at law, would have obtained, and been entitled to, a verdict in his favor.

3. Does the complainant show a sufficient excuse for not making his defence at law ?

I think he does. He is an old and ignorant man, unable to write, resident in a different county from that wherein the judgment was had; as is known judicially to the Court, one of the largest counties in the State, with but a single postoffice in it. Old age and ignorance are never excuses for the non-performance of duty, but they are in a question of laches entitled to their weight. Upon the reception of the letter, informing him of the pendency of the suit, he instructs his son to write to counsel to defend the suit. The letter is written, but miscarries. By law, the judgment could not be taken till the second term, if the suit be plead to. Supposing it defended, he made no effort in the case at law, till the term of the Court, the return term of the writ, when the judgment was taken, had passed. It was then too late to act there ; and as soon as informed that a judgment is taken against him, he files his bill to enjoin the judgment. His omission to defend was accident, without fault, and he is entitled to relief in equity. *Marine Ins. Co.* v. *Hodgson*, 7 Cranch, 332 ; *Foster* v. *Wood*, 6 John. Ch. R. 87.

4. Even though the complainant would not be entitled to a new trial, on the facts stated in the bill, he will be entitled to relief from the fraud of the defendant, Winans, by a perpetual injunction. Fraud is especially for the cognizance of equity, and will be relieved against at law, where the party complaining has not been able, from no fault of his own, to make his defence there. The jurisdiction of this Court, although denied by the demurrer, over matters of fraud, is too well established, and its right to check and

restrain judgments at law, based in fraud, when no negligence can be imputed to the applicant for relief, is too well settled to need reference to adjudicated cases.

5. The failure on the part of defendant, Winans, to file the note in the suit at law, entitles the complainant to relief. This Court will not permit the defendant to hold both the judgment and the note against him. Upon a bill to foreclose a mortgage, the note must be produced before decree. *Bean, et al.* v. *Hawley, et al.,* 3 Conn. Rep. 110 ; 2 Lou. T. Rep. 12. With the same propriety should the Court require a production of the note sued on, before judgment on it will be permitted to stand.

6. The objection to the amended bill is not a material one ; it sets up no new fact, as the ground for the equitable interposition of the Chancellor. The facts upon which the injunction was prayed, are all stated in the original bill. Had Court been in session, there would have been no necessity for an amended bill ; a mere motion would have sufficed. If the Court would (as it had already done) grant the writ to Warren, it would, as a matter of course and of right, have granted a similar writ to Washington county.

*J. F. Foute,* in reply.

The defendant insists that the complainant's bill does not show that he was prevented from his defence, by fraud or accident, and without any fault of his own. The complainant was guilty of gross negligence. His bill states, that the writ was served on him on 27 Feb. 1841, by the sheriff of Warren county, at the very place where Judge Guion, the complainant's retained attorney, resides ; and also, that his retained attorney, Judge Guion, early in the spring of 1841, advised the complainant, by letter, of the pendency of the suit, &c., two several and distinct notices of the suit within a short time, to prepare and put in his defence, and affording him ample time before the return term (3d Monday of April, 1841) for that purpose, if in fact he had any such defence as is stated in the bill. The complainant shows that he lived in the county of Washington, adjoining the county of Warren, in which the suit was brought, and if the Court can know anything judicially of the number of postoffices, and distances, and means of com-

munication, &c., it must know that the complainant was convenient to the courthouse of Warren county, and, whether or not, had ample time and notice for defence by himself, by service of process, and also by his retained counsel in Warren county.

The defence insisted on by the complainant, and the fraud he charges in the use made of the note sued upon, were good and available at law, for anything apparent in the bill ; and indeed the complainant so considers it, and the complainant could have availed himself of the defence at law, and had full and fair notice, time and opportunity, to do so, and was bound to do so, unless prevented by the fraud of the plaintiff at law, or pure accident unmixed with negligence of the complainant, neither of which is shown by his bill, and therefore he cannot be relieved in this Court.   The 2d and 3d grounds of the argument, we think fully answered and disposed of by the foregoing remarks ; and we feel very confident that if the 2d ground of argument be admitted, still the complainant cannot in this case be relieved ; and that the facts assumed in the 3d position are not sustained or made out by the bill ; and the authorities cited in support of that position, do not, upon a careful examination of them, aid the complainant's case ; and especially the cases 7 Cranch, 332, and 5 How. 303, and 539, are certainly clearly and strongly against the case made by the bill.

To the 4th position assumed by the complainant, it is sufficient to reply, that the fraud charged by the bill against Winans, if true, constituted a good and available defence at law, where the complainant was bound to make it ; and having failed to do so by his own gross negligence, as his bill fully shows, he cannot now be heard to claim advantage from his own neglect.

The 5th position assumed, " that the failure of the defendant Winans to file the note in the suit at law," entitles complainant to relief here, is indeed a strange one.   Winans was not bound to make profert of his note, or even file it in his action of assumpsit. The note was only evidence of his demand, and he was only bound to exhibit it to the Court when judgment was taken as evidence of his claim ; this he did ; the record does not show the contrary, and this Court will presume that the court of law did not grant a judgment without a proper showing by the plaintiff at law, and that

everything was shown by the plaintiff to entitle him to his judgment. The note is now utterly worthless, and of no validity against the complainant ; it is forever merged in the judgment ; the record of this judgment at law will forever protect the complainant against another recovery on the same note, and the complainant does not charge any misdescription of the note sued on, or any reason or means by which he could ever be made liable to another recovery thereon. Hence we maintain that this position is not supported by reason or authority.

We beg leave to refer your Honor to the case of *Portevant* v. *Wheat*, lately decided in the Chancery Court at Monticello, which we conceive to be in point, and fully to sustain the demurrer in this case.

CHANCELLOR. The demurrer in this case presents three questions for my consideration. 1. Does a bill lie in this Court for a new trial ? 2. Is the excuse offered by the complainant in this case a valid one, for not making his defence at law ; and, 3, would that defence, if made, avail him ?

I have presented the points made by the demurrer in the above order, for the reason, that unless I answer them each in the affirmative, as I have stated them, the demurrer must be sustained.

Upon the first point I can have no doubt. Originally, the power to grant new trials at law, in cases of fraud or surprise, was a prolific source of equitable jurisdiction ; and was so frequently called into exercise, that, from necessity, courts of common law were compelled to assume the same authority. And since, in cases where it is in their power to do so, these latter courts have exercised the right, courts of equity have rarely interfered, and never where, in the court of common law, the party had his full opportunity to obtain a new trial, and failed to avail himself of it. In that numerous class of cases, however, where it is out of the power of the common law tribunal to grant this relief, where from fraud of the one party, or unavoidable accident, or unforeseen necessity of any kind, the other party has not been able to make that defence or proof at law, which he really can make, and has himself been in no fault, and the term of

the court has elapsed, at which the judgment at law has been rendered against·him, I could not doubt, even if the question were now presented for the first time for judicial determination, that upon well settled principles of equitable jurisdiction, this Court would interfere and arrest the enforcement of an iniquitous judgment, by a perpetual injunction, until the party obtaining it should himself yield to the just demands of the other.    The High Court of Errors and Appeals has, however, in the case of *Joslin* v. *Coffin* (5 Howard, 539), expressly adjudicated upon this point, and I have, in other cases, frequently exercised the power.

2. The second point is not altogether free from difficulty.

The declaration was filed in the Warren Circuit Court, on the 27th of September, 1840 ; the first writ of *capias ad respondendum*, was returned "not found." An *alias* writ, however, was executed upon the complainant, on the 27th day of February, 1841, and was returnable on the third Monday of the ensuing April.   At that term of the Court, judgment by default was taken against him. Is his excuse sufficient for not having made his defence at law ? and what is that excuse ?

He avers in his bill, that of the service of the writ he knew nothing, his only knowledge of the suit was derived from a letter to him from his retained attorney, to attend to his business generally, informing him of the pendency of the suit, and inquiring his defence, if he had any ; that he is himself unable to read, advanced in years, and the resident of a different county from that in which the suit was pending ; that upon the reception of his counsel's letter, he instructed his son to write his defence to his attorney, which was done ; but that the letter was miscarried upon the way, and never reached its place of destination ; that had the letter arrived safely, it would have been in time to have arrested the judgment by default, and he could have made his defence at law.

The general rule is, that the party applying for the aid of a court of equity, to obtain a new trial at law, must show that he has been guilty of no negligence ; that he has been prevented by fraud, or by accident beyond his control, from making his defence at law. Does the complainant bring himself within the rule ?   I think he does.   He could have no reasonable expectation that his letter

would miscarry. That letter communicated his defence to counsel. By operation of law, had an ordinary plea of *non assumpsit* been filed, the cause would have been continued. It would not have been ready for trial at the return term of the writ. He had every reason to believe his counsel was in possession of his defence, and he had a right to repose upon that belief. He did not ascertain the existence of the judgment against him, until after the term of the court at law had elapsed, at which the judgment was rendered; that court had no longer any power in the matter, and his application to this Court was coetaneous with his knowledge of the existence of the judgment; to deny him the right to make his defence, would be to exact a degree of vigilance and diligence, which the most prudent and careful man, in the full exercise of youth and intelligence, would not ordinarily exhibit. I think, if his defence is a good one, he should be permitted to make it; and this brings me to the third question raised by the demurrer.

3. Is the defence he proposes to make a good one?

It seems that the plaintiff at law sued upon a note, made by Henry Green, now dead, as principal, and the complainant and two others as sureties, payable to the Mississippi Union Bank; the suit was brought for the use of Anthony V. Winans, who was the real plaintiff. The bill avers, that this note was made for discount at the Union Bank, that the discount was refused by the bank, and that, without the knowledge or consent of the complainant, the note, after it was "*functus officio*," was transferred to the defendant Winans, in payment of the debt of some third person, other than the said Henry Green, the principal in the note, and that Winans well knew the note was void. The complainant states, also, that he had never heard of the note after the bank had refused to discount it, until he was sued upon it at law. In this state of fact, is the complainant liable upon the note? I think not.

However I might, upon general principles, be inclined to think the law should be, I cannot doubt, since the adjudication of the High Court of Errors and Appeals, in the case reported in 5th Howard, of the *Commercial Bank of Natchez* v. *Claiborne and others,* that where a note is made to be discounted by one person, who refuses to discount it, and it is afterwards discounted by another,

with full knowledge of the facts, that the makers of the note are liable to the holder. But I apprehend it will be found, upon an examination of that case, and the reason and principle upon which the decision, both in that and the cases in New York, recognizing a similar doctrine, are based, that the case now before me is clearly distinguishable from both, rests upon a different basis, and cannot, by any analogy that I can discover between them, be determined in the same way.

As the cases from New York, and the decision of our own Court, have been pressed upon me in the argument, I will briefly state what I consider to be the distinguishing feature of the present case, and the distinction between this and the cases to which I am referred.

The case of the *Commercial Bank of Natchez* v. *Claiborne and others,* 5 How. 303, was briefly this : Claiborne had made his note for discount at the bank to which it was payable, with the proper sureties upon it ; the bank refused to discount it, and Claiborne took it to Briggs, Lacoste, & Co., who gave him the money upon it. The Court say, that Briggs, Lacoste, & Co. shall recover upon the note. Why ? because the note was made for Claiborne, and Claiborne had the benefit of it. It was executed to raise money for the benefit of the principal ; it accomplished its object ; what room, then, was there for complaint on the part of the sureties ? Their liability was neither abridged nor enlarged.

The case of the *Bank of Rutland* v. *Beck,* 5 Wend. 66, was decided upon the same principle. The bank refused to discount the note, and the principals in the note delivered it for their own use, and to secure a debt of theirs, to a third person : the note was made for the benefit of the principals ; they receive the benefit of it. And that is the principle which runs through and regulates all the cases on that subject.

I do not find myself without authority in the view I take of this case. The defendant obtained the note, according to the averments of the bill, from some one who had no authority to it. He did not get it from the principal debtor, but from some third person, not a party to the note. He is not a *bonâ fide* holder without notice : the note is payable to the Mississippi Union Bank, and is not indorsed : the defendant is of course, therefore, affected with all the

equities of the complainant ; and if neither his principal nor himself had the benefit of the note, by what reason, or upon what principle, shall the defendant, who has full notice of these facts, be permitted to coerce of the makers the amount of the note ?  By what authority does he hold it ?  Whence did he derive his title to it ?  These are pertinent questions, which he must answer, before he can be permitted to recover upon the note.

In the case of *Woodhull* v. *Holmes*, 10 John. 231, the note was executed to be discounted in bank, but was put into circulation by fraud, and the Court says : " in such case, the holder is bound to show himself a *bonâ fide* possessor."  In the same volume, I find a case very similar to the one before me : that of *Denniston* v. *T. L. Bacon*, and another, 10 John. Rep. 198.  In that case, an agreement was made between the maker and payee, that the note should be discounted in bank, on certain terms ; the bank refused to discount it, and it was passed off by the payee and negotiated, without notice of the particular agreement upon which the note was to be discounted ; and the Court held the maker of the note discharged from it.  The assignee did not obtain the note in the due course of trade.

I find, also, the case of *Adams Bank* v. *Jones*, 16 Pick. 574, and the case of *Valetie* v. *Parker*, 6 Wend. Rep. 615, are both decided upon the distinction I have laid down, that the note must be discounted for the benefit of the person for whom it was made, where the party taking it has notice of the object of the creation of the note.

I might extend this review further ; but I apprehend no case can be found, at least, the researches of counsel and my own investigations, have furnished me with none, where a surety upon a note made for a particular purpose, has been held liable, where the note has been entirely diverted from the design for which it was originally made, and been, with the full knowledge of the party taking it, appropriated to a wholly different one.  In such case, neither the principal nor surety would be bound.

If the defendant Winans is a *bonâ fide* holder of the note, it is a defence peculiarly in his power and knowledge to make ; and I have repeatedly held, that where a party designs to protect himself

Herring *v.* Winans, et al.

under the defence of being a *bonâ fide* purchaser for a valuable consideration without notice, it is a defence which he must set up himself, and that it is not necessary for the other party to charge him with notice.

The demurrer in this case must be overruled, and leave given to answer in sixty days.